UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
SHAMEKIA HOLLAND,

                         Plaintiff,

-against-

VILLAGE OF MASTIC BEACH, THERESA
MADARASZ and PATRICK McCALL, in their
individual and official capacities, and John Doe # 1,
a Village of Mastic Beach Public Safety Officer, in his
individual and official capacity,

                         Defendants.
-------------------------------------------------------------x

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ FEB 01 2016 ★

LONG ISLAND OFFICE

VERIFIED COMPLAINT
File #

CV-16 504

FEUERSTEIN, J

SHIELDS, M.J.

## 1. INTRODUCTION

1. The plaintiff, SHAMEKIA HOLLAND, resided as a tenant at 226 Jefferson Drive,

Mastic Beach, New York, together with Kenneth Montalvo, and their five year old son, Angel

Holland.  Plaintiff and her family had resided at the premises for about 3 and ½ years, as month

to month tenants, paying rent to their landlord, Gregory Emmette.  Mr. Emmette passed away in

or about July, 2014.  Thereafter, plaintiff paid rent for a period of time to his son who resided in

California and was a member of the United States Air Force.

On or about September 16, 2015, housing inspectors employed by defendant Village of

Mastic Beach arrived at the premises unannounced.  Present at plaintiff's apartment was a baby

sitter watching plaintiff's five year old son while plaintiff and Mr. Montalvo were out.  Arriving

at the premises were defendant Madarasz, defendant McCall, several Village Public Safety

officers and officers from the Suffolk County Police Department, Seventh Precinct.  Defendants

Madarasz and McCall harassed the baby sitter, a 21 year old young woman, to allow them into

the premises. The baby sitter complied with defendants' demands. No warrant was obtained by defendants and no exigent circumstances existed that might have obviated the need to obtain one.

Defendant Madarasz, upon information and belief, was the head of the Building Department of Mastic Beach. Defendant McCall was the head of the Department of Public Safety, the name of the agency having been changed from the Department of Code Enforcement in or about November, 2014.

The baby sitter called plaintiff, asking her to return to the premises immediately. When she arrived, plaintiff was informed by defendant Madarasz that she must vacate the premises immediately. When asked for what reason, Madarasz cited smoke detectors without batteries, a defective chimney cap, a railing to the three back stairs that was defective, the venting of an unused wood stove and wires from a ceiling fan that had been taken down. Defendants did not give plaintiff any papers detailing these alleged defects. Plaintiff asked Madarasz whether she could repair any defective conditions and was told that, because plaintiff was not the owner of the premises, she could not.

Defendant Madarasz initially told plaintiff that she must vacate the premises within ½ hour. That time was extended to 2 hours by defendant McCall. Plaintiff and Mr. Montalvo, who, subsequent to plaintiff, arrived at the premises, endeavored to remove what belongings they could from the premises. They stored some belongings in the garage, but were forced to leave much of their belongings in the premises which defendants proceeded to board up after about 1 and ½ hours. Subsequent to this date, unknown persons broke into the premises and vandalized it. Food belonging to plaintiff was stolen, the fish tank belonging to plaintiff's son was vandalized. Still inside the premises, behind boards intended to prevent entry are numerous belongings of plaintiff and her family, including a bedroom set, dining room furniture, Mr.

Montalvo's clothing, and toys of the couple's son. Upon information and belief, defendants telephoned Suffolk County Child Protective Services who arrived at the scene and took the child, Angel Holland, into their custody, as plaintiff and her family were now homeless.

While she was outside of the premises as this eviction was continuing, a Mastic Beach Village Public Safety Officer, referring to plaintiff's name, said to defendant Madarasz, in a voice that could be overheard by plaintiff: "Shamekia, I haven't figured out if that is a Spic or a Nigger name." Since the eviction, plaintiff and Mr. Montalvo have been required to call the Village to gain entry into the premises to see to their belongings and have often been unable to gain access to the premises.

At the time of the eviction, defendants boarded up the premises as indicated. They attached a placard to the boards stating that the eviction was conducted pursuant to certain enumerated sections of the N.Y.S. Property Maintenance Code, and that the property had been condemned by the Village of Mastic Beach. As set forth in the complaint, this was a sham as no conditions existed at the premises that would have justified the emergency vacating of the home. Nonetheless, when plaintiff, on November 25, 2015, made a written request pursuant to the New York State Freedom of Information Law, (FOIL), for copies of any records regarding the eviction, she received a written response from the Village Clerk, Susan F Alevas, Esq., dated December 4, 2015, that it was the Suffolk County Police Department (SCPD) that initiated the removal and not defendants, and that plaintiff should look to that agency for any documents regarding her removal. In fact, the SCPD does not perform evictions and plaintiff was so informed when she called SCPD.

As a result of the illegal eviction of plaintiff and her family, they were rendered homeless for approximately two months, their son was placed in foster care and their belongings were

damaged through vandalism and many still remain at the boarder up subject premises where

plaintiff has limited access to them.

Plaintiff is entitled to damages, declaratory and injunctive relief and attorney fees for

defendants' unlawful entry into her home and the illegal eviction of plaintiff and her family.

## II.  JURISDICTION

2.  This Court has jurisdiction of this matter pursuant to 28 U.S.C. Section 1331, since this action

arises under the Constitution and laws of the United States.

3.  This Court has jurisdiction of this matter pursuant to 28 U.S.C. Section 1343, because

plaintiff seeks to redress the deprivation, under color of law, of rights, privileges and immunities

secured to her by the Constitution and laws of the United States.

4.  This Court has jurisdiction pursuant to 42 U.S.C. Section 3613 because defendants' actions

violated plaintiff's federal statutory right to fair housing.

5.  Plaintiff's cause for declaratory and injunctive relief is authorized by 28 U.S.C. Sections 2201

and 2202 and Rule 57 and 65 of the Federal Rules of Civil Procedure.

6.  Venue is proper in this Court pursuant to 28 U.S.C. Section 1391 (b) and c.  Defendants all

reside in this jurisdiction, the events or omissions giving rise to the claims occurred in this

Judicial District and the property at issue is situated in this Judicial District.

## III. PARTIES

7.  Plaintiff, Shamekia Holland, is a 36 year old woman, of Dominican and Sicilian descent.  She

is the mother of 5 year old Angel Holland and resided, as a tenant, with the child's father,

Kenneth Montalvo, at 226 Jefferson Drive, Mastic Beach, New York for approximately 3 and ½

years prior to her forcible eviction from the subject premises on September 16, 2015 by

defendants. Mr. Montalvo is Puerto Rican.  Ms. Holland is disabled and in receipt of disability

benefits. After two months of homelessness occasioned by her illegal eviction, plaintiff found

housing and currently resides in Patchogue, New York.

8. Defendant, Village of Mastic Beach ("the Village") is a municipal corporation organized

under the laws of New York State in 2010, having its principal offices at 369 Neighborhood

Road, Mastic Beach, New York 11951. Mastic Beach is located in the southeast part of the

Town of Brookhaven and had been an unincorporated census-designated place prior to its

incorporation in or about September, 2010. On or about June 1, 2011, defendant took over from

the Town of Brookhaven the enforcement of building codes and the issuance of rental permits.

The actions of defendant represent official policy in the Village of Mastic Beach. The Village

has undertaken to enforce its building codes in an unlawful and discriminatory manner which has

directly caused the eviction of plaintiff.

9. Defendant, Theresa Madarasz, is employed by defendant Village of Mastic Beach as a full-

time building inspector. Upon information and belief, her appointment to this position was

effective as of October, 2014. Upon information and belief, defendant Madarasz is head of the

Building Department. She was present at the September 16, 2015 inspection of plaintiff's

premises, actively directing plaintiff's eviction and informed plaintiff that she had ½ hour to

vacate the premises. The actions of defendant represent official policy in the Village of Mastic

Beach. She is an official with final decision making authority whose actions caused the

deprivation of rights belonging to plaintiff and her family.

10. Defendant, Patrick McCall, was head of the Dept. of Public Safety of the Village of Mastic

Beach at the time of the illegal eviction of plaintiff and her family on September 16, 2015.

Defendant McCall was hired in or about July, 2015. As stated, the Dept. of Code Enforcement

was changed to the Dept. of Public Safety as of November, 2014. Upon information and belief,

defendant McCall has subsequently been terminated from his position, or forced to resign

because of issues with his application for employment. Defendant McCall was present at the

home of plaintiff on September 16, 2015 and actively participated in and directed the eviction of

plaintiff and her family.  While employed by defendant Village, the actions of defendant

represented official policy in the Village of Mastic Beach.  He was an official with final policy

making authority whose actions caused the deprivation of rights belonging to plaintiff and her

family.

11.  John Doe, # 1 is a Public Safety Officer of the Village of Mastic Beach, who was at the

scene of the illegal eviction of plaintiff and her family.  He stated to defendant Madarasz, in the

hearing of plaintiff, referring to her name: "Shamekia, I haven't figured out whether that is a Spic

or a Nigger name.  In so doing, he was implementing a policy of the Village of Mastic Beach to

drive from the community members of minority families and those who are permanent renters.


## IV.  FACTS

12.  Plaintiff, Shamekia Holland, resided at 226 Jefferson Drive, Mastic Beach, New York

together with her son, Angel Holland, 5 years old, and the child's father, Kenneth Montalvo.  The

family had resided as month to month tenants at that address for approximately 3 and ½ years.

13.  Plaintiff's landlord was Gregory Emmette.  The monthly rent was $800.  Mr. Emmette

passed away in July, 2014.  Thereafter, plaintiff paid monthly rent for a time to her landlord's son

who resided in California.

14.  On September 16, 2015, while plaintiff and Kenneth Montalvo were not at the premises,

agents of defendant Village came to the premises and sought entry.  Present were defendants

Madarasz and McCall, Village Police and police officers from the Suffolk County Police

Department, 7th Precinct.

15.  Defendants Madarasz and McCall sought entry into the premises.  They encountered a young woman, approximately 21 years of age who was baby sitting for plaintiff, watching plaintiff's five year old son.

16.  Employing threats and bullying, defendants frightened the baby sitter who allowed defendants to enter into the premises.  There were no exigent circumstances existing that would have prevented defendants from obtaining a warrant for the entry into plaintiff's dwelling.

17.  This baby sitter did not have a key to the premises, baby sat for plaintiff only occasionally and was a friend of plaintiff's daughter who did not reside with plaintiff.  She had no authority, apparent or actual, to allow anyone into the premises.

18.  Upon allowing defendants to enter the premises, the baby sitter telephoned plaintiff, asking her to return to the house immediately.  When plaintiff arrived, defendant Madarasz informed her that she had ½ hour to vacate the premises.  Defendant McCall subsequently extended the time to 2 hours.

19.  When plaintiff inquired of defendant Madarasz regarding the reasons for the demand that she vacate the premises, defendant informed her of the following conditions at the premises: a defective chimney cap, smoke detectors missing batteries, a defective railing for the three back stairs, hanging wires from a ceiling fan that was not attached and improper venting for a wood stove that had never been used.  The wires from the fan were capped and the fan was in the room waiting to be re-attached.  As stated, the stove had never been used.

20.  When plaintiff asked defendant Madarasz whether plaintiff could repair any claimed defects, defendant told her that she could not because she was not the owner of the premises.

21.  Thereafter Kenneth Montalvo arrived at the premises and he and plaintiff started to remove

what belongings they could from the premises and put them in the garage. After about 1 and ½ hours, defendants informed plaintiff and Mr. Montalvo that the premises was to be boarded up and nothing further could be removed.

22. Many of the belongings of plaintiff and her family were still inside the premises, including a bedroom set, dining room furniture, clothing belonging to Mr. Montalvo, toys belonging to their child, Angel Holland and food in the refrigerator.

23. Before plaintiff and her family left the boarded up premises, agents of Suffolk County Child Protective Services (CPS) arrived at the scene, apparently having been notified by defendants. Since plaintiff and her family were now homeless, CPS removed the child from the care of plaintiff and Mr. Montalvo.

24. Upon affixing boards to the premises, defendants placed a placard indicating that the house had been closed because of dangerous conditions. The notice listed the following sections of the New York State Property Maintenance Code: 107.1.1, 107.1.2, 107.1.3 and 107.1.4. Attached as Exhibit A are the relevant sections of the Code.

25. The notice affixed to the boarded up residence indicated that the order to vacate had been issued by the Village of Mastic Beach. Attached as Exhibit B is a photograph of the notice taken by plaintiff.

26. As a result of the illegal eviction from their home, plaintiff and her family suffered hardship, humiliation, embarrassment and homelessness.

27. As a result of the actions of defendants, plaintiff and Mr. Montalvo were homeless for approximately two months, staying with friends, in a hotel, in a trailer, in a truck. In mid-November, 2015, they found housing in Patchogue. However, their apartment is too small to accommodate the furniture and furnishings still at their former premises.

28. In order to gain access to their belongings still at the premises, plaintiff must call defendants' offices giving 48 hours' notice to be allowed entry into the subject premises. Often, defendants have not responded to their entreaties.

29. Since their removal from the premises, the house has been damaged by vandals, who stole plaintiff's food from her refrigerator, damaged the child's fish tank and damaged other items at the premises.

30. While standing outside of the premises during the course of the eviction, plaintiff overheard a Village of Mastic Beach Public Safety Officer speaking to defendant Madarasz, referring to plaintiff's first name, say: "Shamekia, is that a Spic or a Nigger name?"

31. Upon information and belief, a principal reason for the incorporation of the Village of Mastic Beach as an independent Village was to rid the Village of minority and permanent tenants.

32. Because she had received no documentation at the time of the eviction on September 16, 2016, regarding the cause of the order that she and her family vacate the premises, plaintiff went to the offices of the defendant Village on November 25, 2016 and filed a written request pursuant to the New York State Freedom of Information Law (FOIL), seeking information regarding the eviction and a list of any defects found at the premises. A copy of her request is attached as Exhibit C.

33. In a letter dated December 4, 2015, plaintiff received a response from the Village Clerk of defendant Village. A copy is attached as Exhibit D. The Clerk, Susan F. Alevas, Esq., wrote that the Suffolk County Police Dept. facilitated the eviction of plaintiff and her family. This was written despite the notice on the door of the premises, attributing the eviction to violation of the NYS Property Maintenance Code, and attached as Exhibit B.

34. Plaintiff thereafter called the SCPD who informed her that they had no records relating to the eviction and further that they do not conduct evictions. In fact, the Police Dept. has no authority to evict tenants from their homes.

35. Plaintiff and her family had a property interest in their tenancy and in their home that is subject to the protection of due process.

36. The Building Code of the Village of Mastic Beach at Chapter 178, provides in part:

"Section 178-3 Code Enforcement Officer: inspections.

A. The Office of Code Enforcement Officer is hereby created. The Code Enforcement Officer shall administer and enforce all the provisions of the Uniform Code, the Energy Code and this chapter. The Code Enforcement Officer shall also be known as the Building Inspector and the Office of Code Enforcement shall also be known as the Building Department for purposes of the Village Code. The Code Enforcement Officer shall have the following powers and duties:

....

(3) To conduct construction inspections, inspections to be made prior to the issuance of certificates of occupancy/certificates of compliance, temporary certificates and operating permits, firesafety and property maintenance inspections, inspections incidental to the investigation of complaints, and all other inspections required or permitted under any provision of this chapter;

....

(5) To review and investigate complaints;

(6) To issue orders pursuant to Section **178-15A**, Compliance orders of this chapter;

(7) To maintain records;

....

B. The Code Enforcement Officer shall be appointed by the Village Board of Trustees...."

37. Section 178-8 provides:

"Unsafe buildings and structures.

Unsafe buildings and equipment in this Village shall be identified and addressed in accordance with the procedures set forth in Chapter **180**, Buildings and Structures Unsafe."

38. Section 178-11 provides, in part:

"Firesafety and property maintenance inspections.

....

B. Inspections permitted.  In addition to the inspections required by Subsection **A** of this section, a firesafety and property maintenance inspection of any building, structure, use, or occupancy, or of any dwelling unit, may also be performed by the Code Enforcement Officer or an inspector designated by the Code Enforcement Officer at any time upon; the request of the owner of the property to be inspected or an authorized agent of such owner; receipt by the Code Enforcement Officer of a written statement alleging that conditions or activities failing to comply with the Uniform Code or Energy Code exist; or any other information, reasonably believed by the Code Enforcement Officer to be reliable, giving rise to reasonable cause to believe that conditions or activities failing to comply with the Uniform Code or Energy Code exist; provided, however, that nothing in this subsection shall be construed as permitting an inspection under any circumstances under which a court order or warrant permitting such inspection is required, unless such court or warrant shall have been obtained and that no inspection or investigation of any private residence shall occur if the occupant thereof denies entry thereto, unless reasonable evidence exists of possible hazardous conditions therein, and then only if approved by the Board of Trustees and he or she is accompanied by a police officer of the Village.

....

D. Emergency abatement.  In addition to the remedies set forth in Section **178-15** herein, the Code Enforcement Officer or an inspector designated by the Code Enforcement Office, upon finding fire hazards in or upon any premises, if he or she deems time to be of the essence, may order immediate abatement or corrections necessary to eliminate such hazards.

...."

39. Section 178-12 provides in part:

"Complaints.

The Code Enforcement Officer shall review and investigate complaints which assert the existence of conditions or activities that fail to comply with the Uniform Code, the Energy Code, this chapter, or any other local law, ordinance, or regulation adopted for administration and enforcement of the Uniform Code or the Energy Code.  The process for responding to a complaint shall include such of the following steps as the Code Enforcement Officer may deem to be appropriate:

A. Performing an inspection of the conditions and/or activities alleged to be in violation, and documenting the results of such inspection;

B. If a violation is found to exist, providing the owner of the affected property and any other person who may be responsible for the violation with notice of the violation and opportunity to abate, correct or cure the violation, or otherwise proceeding in the manner described in Section **178-15,** Enforcement; penalties for offenses of this chapter;

...."

40. Section 178-13 provides in part:

"A. The Code Enforcement Officer shall keep permanent official records of all transactions and activities conducted by all code enforcement personnel, including records of:

....

(4) All inspections and tests performed;

....

B. All such records shall be public records open for public inspection during normal business hours...."

41. Section 178-15 provides in part:

"Enforcement; penalties for offenses.

A. The Code Enforcement Officer is authorized to order, in writing, the remedying of any condition or activity found to exist in, on or about any building, structure, or premises in violation of the Uniform Code, the Energy Code or this chapter. Upon finding that any such condition or activity exists, the Code Enforcement Officer shall issue a compliance order. The compliance order shall be in writing, dated and signed by the Code Enforcement Officer: specify the condition or activity that violates the Uniform Code, the Energy Code, or this chapter; specify the provision or provisions of the Uniform Code, the Energy Code, or this chapter; specify the provision or provisions of the Uniform Code, the Energy Code, or this chapter which is/are violated by the specified condition or activity; specify the period of time which the Code Enforcement Officer deems to be reasonably necessary for achieving compliance; direct that compliance be achieved within the specified period of time; and state that an action or proceeding to compel compliance may be instituted if compliance is not achieved within the specified period of time...."

42. Chapter 180. Buildings and Structures. Unsafe. of the Village Code is attached in full

as Exhibit E. It may be seen that it is the Building Inspector who has the authority to determine

that a building or structure is dangerous, pursuant to Sections 180-3, 180-4 and 180-16. In that

event, a notice shall be served, among others, upon any lessees, pursuant to Section 180-4 B.

43. Section 180-5 states the requirements for the contents of the notice, providing that the person or persons served shall have 10 days to correct the hazardous conditions and, upon the neglect or refusal to do so, a hearing shall be held before the Board of Trustees of the Village. The time and place of the hearing must be stated on the notice.

44. Section 180-5 F provides that, if, after the required hearing, conditions deemed dangerous, hazardous or unsafe are not corrected, "the Village Board may order the building, property, structure, or condition to be corrected, or secured or taken down, abated or removed."

45. Defendants Madarasz and McCall provided plaintiff with no notice at all, much less with one that offered her a hearing at a specified time and place, and, upon her inquiry, as set forth above, the defendant Village denied that it had any part in her eviction.

46. The Fourth Amendment to the United States Constitution provides that "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the placed to be searched, and the person or thing to be seized."

47. The Fair Housing Act (42 U.S.C. Sections 3601, *et seq.*) provides at Section 3604:

"...it shall be unlawful-

(a) To refuse to sell or rent after the making or a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin...."

48. The Fair Housing Act, at Section 3617, provides:

"It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603..., 3604...,3605...or 3606 of this title."

49. The Fair Housing Act, at Section 3613, provides:

"(a) Civil Action

   (1)

(A) An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice,...to obtain appropriate relief with respect to such discriminatory housing practice or breach.

....

c) Relief Which May Be Granted

(I) In a civil action under subsection (a) of this section, if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages, and subject to subsection (d) of this section, may grant as relief, as the court deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate).

(2) In a civil action under subsection (a) of this section, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs..."

50. 42 U.S.C. Section 1983 provides that:

   "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress,...."

## V.  STATEMENT OF CLAIMS

51. The plaintiff repeats and realleges each and every prior allegation of this complaint as if set

forth in full herein.

52. Defendants Village of Mastic Beach, Theresa Madarasz and Patrick McCall have been in

charge of the Dept. of Public Safety and the Building Dept. at the time of the events set forth in this complaint, and, as such, set policy and custom for the enforcement of housing codes in the Village of Mastic Beach.

53. Plaintiff and her family had a property interest in her tenancy and in her home that is subject to the protection of due process under the Fourteenth Amendment to the United States Constitution, the Fourth Amendment to the United States Constitution, and the laws governing fair housing in the United States.

54. In their illegal entry into plaintiff's premises, and their illegal eviction of plaintiff and her family, defendants have violated plaintiff's rights to due process, to the security of her home and possessions, and the laws governing fair housing in the United States and plaintiff is entitled to redress. Defendants provided plaintiff with no notice and no right to be heard prior to her illegal eviction from her home. Neither were there exigent circumstances allowing the actions of defendants.

## SECOND CLAIM FOR RELIEF

55. Plaintiff repeats and realleges each and every prior allegation of this complaint as if set forth in full herein.

56. Defendants have acted under color of law in the administration of their duties to deprive plaintiff of her property interest in her home and in her tenancy, in the security of her home and possessions, and in her rights under the Constitution and laws of the United States, specifically, the Fourth Amendment, the Fourteenth Amendment and plaintiff has the right to assert a remedy under 42 U.S.C. Section 1983.

## THIRD CLAIM FOR RELIEF

57. Plaintiff repeats and reallges each and every prior allegation of this complaint as if set forth

in full herein.

58. Defendants have deprived plaintiff of her rights under the Fair Housing Act by denial of a dwelling and by coercion, intimidation, threats and interference with plaintiff's enjoyment of her rights on account of race and national origin., and plaintiff is entitled to a remedy therefor.


FOURTH CLAIM FOR RELIEF

59. Plaintiff repeats and realleges each and every prior allegation of this complaint as if set forth in full herein.

60. The actions of defendants shock the conscience and are a violation of plaintiff's rights to substantive due process. Plaintiff is entitled to redress therefor.

FIFTH CLAIM FOR RELIEF

61. Plaintiff repeats and realleges each and every prior allegation of this complaint as if set forth in full herein.

62. Defendants have exercised dominion and control over the possessions of plaintiff and her family in an illegal manner and plaintiff is entitled to damages therefor.

PRAYER FOR RELIEF

WHEREFORE, plaintiff asks this Court to

a) assume jurisdiction of this action;

b) declare that:

1) defendants have illegally gained entry into plaintiff's residence in violation of plaintiff's rights under the Fourth Amendment to the United States Constitution;

2) defendants have illegally evicted plaintiff and her family from their home without affording her notice or a right to be heard in violation of her right to procedural due

process;

   3) defendants have acted in a manner that shocks the conscience, depriving plaintiff of her right to substantive due process;

   4) defendants have discriminated against plaintiff and her family in violation of the federal Fair Housing Act and plaintiff is entitled to redress;

   5) defendants have acted under color of statute, ordinance, regulation, custom and usage, and have violated plaintiff's federal Constitutional and statutory rights, and plaintiff is entitled to redress therefore;

   6) defendants have deprived plaintiff of access to her possessions and plaintiff is entitled to redress therefor;

c) order:

   1) a permanent injunction directing defendants to pay for the storage of the belongings of plaintiff and her family in the garage and at the subject premises, in a place of storage of plaintiff's choosing, until such time as plaintiff is able to accommodate such belongings in a residence of her own;

   2) plaintiff is entitled to compensatory damages from all defendants on account of the unlawful entry into her home the illegal eviction of plaintiff and her family from the subject premises, and the denial of access by plaintiff to the possessions belonging to her and her family;

   3) plaintiff is entitled to damages from all defendants on account of their violation of the federal Fair Housing Act;

   4) plaintiff is entitled to punitive damages from all defendants.

   5) all defendants pay plaintiff's costs and reasonable attorney fees;

d) grant such other and further relief as to the Court may seem just.

Dated: Islandia, New York
January 26, 2016

Victor J. Ambrose, of counsel to
Jeffrey A. Seigel, Esq.
Nassau/Suffolk Law Services Comm
Attorney for Plaintiff
1757 Veterans Highway Suite 50
Islandia, New York 11749
(631) 232 2400 x 3314

<u>VERIFICATION</u>

STATE OF NEW YORK )

                               SS.:

COUNTY OF SUFFOLK )

SHAMEKIA HOLLAND

being duly sworn, deposes and say:

               That deponent is the   PLAINTIFF

in the within action; that deponent has read the foregoing

   COMPLAINT

and knows the contents thereof; that the same is true to deponent's

own knowledge, except as to the matters therein stated to be

alleged on information and belief, and that as to these matters,

deponent believes it to be true.

                                  *Shamekia Holland*

                                 SHAMEKIA HOLLAND

Sworn to before me this

26 day of JANUARY, 2016

VICTOR J. AMBROSE
Notary Public, State of New York
      No. 4969412
Qualified in Suffolk County
Commission Expires 7/16/ 2018

Exhibit A

**Exhibit A**



- 
  ○
  State
  [ 2010 Property Maintenance Code of New York State ]
  - Chapter 1 - General Requirements
    - SECTION 101 TITLE, SCOPE AND PURPOSE
    - SECTION 102 APPLICABILITY
    - SECTION 103 MATERIALS, EQUIPMENT AND METHODS OF CONSTRUCTION
    - SECTION 104 SERVICE UTILITIES
    - SECTION 105 TEMPORARY STRUCTURES
    - SECTION 106 MAINTENANCE OF EQUIPMENT AND SYSTEMS
    - SECTION 107 UNSAFE STRUCTURES AND EQUIPMENT
    - SECTION 108 EMERGENCY MEASURES
    - SECTION 109 ADMINISTRATION AND ENFORCEMENT


107.1 General.
107.2 Vacant structures.
107.3 Notice.
107.4 Prohibited occupancy.
107.5 Placard removal.
107.1 General.
107.2 Vacant structures.
107.3 Notice.
107.4 Prohibited occupancy.
107.5 Placard removal.

Top Previous Section Next Section    To view the next subsection please select the Next Section option.

## SECTION 107 UNSAFE STRUCTURES AND EQUIPMENT

**107.1 General.** When a structure or equipment is found to be unsafe, or when a structure is found unfit for human occupancy, or is found unlawful, such structure shall be condemned pursuant to the provisions of this code.

**107.1.1 Unsafe structures.** An unsafe structure is one that is found to be dangerous to the life, health, property or safety of the public or the occupants of the structure by not providing minimum safeguards to protect or warn occupants in the event of fire, or because such structure contains unsafe equipment or is so damaged, decayed, dilapidated, structurally unsafe, or of such faulty construction or unstable foundation, that partial or complete collapse is possible.

**107.1.2 Unsafe equipment.** Unsafe equipment includes any boiler, heating equipment, elevator, moving stairway, electrical wiring or device, flammable liquid containers or other equipment on the premises or within the structure which is in such disrepair or condition that

Case 2:16-cv-00504-DRH-AKT   Document 1   Filed 02/01/16   Page 22 of 35 PageID #: 22

such equipment is a hazard to life, health, property or safety of the public or occupants of the premises or structure.

**107.1.3 Structure unfit for human occupancy.** A structure is unfit for human occupancy whenever such structure is unsafe, unlawful or, because of the degree to which the structure is in disrepair or lacks maintenance, is insanitary, vermin or rat infested, contains filth and contamination, or lacks ventilation, illumination, sanitary or heating facilities or other essential equipment required by this code, or because the location of the structure constitutes a hazard to the occupants of the structure or to the public.

**107.1.4 Unlawful structure.** An unlawful structure is one found in whole or in part to be occupied by more persons than permitted under this code, or was erected, altered or occupied contrary to law.

**107.2 Vacant structures.** Vacant structures shall comply with Sections F311.1 through F311.5 of the *Fire Code of New York State*.

**107.3 Notice.** Whenever a structure or equipment has been condemned under the provisions of this section, a notice shall be posted in a conspicuous place in or about the structure affected by such notice. If the notice pertains to equipment, it shall also be placed on the condemned equipment.

**107.4 Prohibited occupancy.** No person shall occupy a placarded premises or shall operate placarded equipment.

**107.5 Placard removal.** The placard shall be removed whenever the defect or defects upon which the condemnation and placarding action were based have been eliminated.

Top Previous Section Next Section    To view the next subsection please select the Next Section option.

COPYRIGHT 2007 by INTERNATIONAL CODE COUNCIL

**Exhibit B**



# CONDEMNED

## BY THE VILLAGE OF MASTIC BEACH

### PURSUANT TO THE NEW YORK STATE
### UNIFORM FIRE PREVENTION & BUILDING CODE
### PROPERTY MAINTENANCE CODE
### SECTION (S) INDICATED BELOW:

107.1.1  Unsafe Structure
107.1.2  Unsafe Equipment
107.1.3  Unfit For Human Occupancy
107.1.4  Unlawful Structure

IN ACCORDANC          N 107.4 OF THE
PROPERTY MAINTE          NEW YORK STATE.

## IT IS UNL          FOR ANY
## PERSON TO OCCU          HIS STRUCTURE

FAILURE TO COMPLY WITH THIS NOTICE MAY RESULT IN A FINE NOT TO EXCEED $2,000.
IMPRISONMENT NOT TO EXCEED SIX MONTHS OR BOTH.

STRUCTURE LOCATION  226 JEFFERSON DR., MBV  10:40 AM

PLACARDED ON  9/16/15  BY _____  #104
                Date      Inspector / Fire Marshal / Investigator

Phone # 631-281-2326
369 Neighborhood Road, Mastic Beach, NY 11951

**Exhibit C**



INC VILLAGE OF

MASTIC BEACH

**OFFICE OF THE VILLAGE CLERK**
**VILLAGE OF MASTIC BEACH**
**369 Neighborhood Road**
**Mastic Beach, NY 11951**
**631.281.2326 extension 300**
**village.clerk@masticbeachvillageny.gov**

631
294-0900

**FREEDOM-OF-INFORMATION LAW (FOIL)**
**REQUEST TO INSPECT PUBLIC RECORDS**

Date: _11-25-15_    Control Number: _95-2015-16_
                                    (For Village Use)

TO:    Village of Mastic Beach Freedom-of-Information Law Officer

FROM:  _Shamekia Holland_
                    (Please print full name)

       ~~〰〰〰〰〰〰~~
                    (Please print full address)

       _226 Jefferson drive_
       (Please print full mailing address if different than above)

       _Self_
       (Please print full name of organization being represented;
        if no organization, then please list "Self")

✓ address

# 293
South ocean
Ave
Patchogue
11772

Please describe information being sought: _I would like_
_information about the day_
_I was removed from 226_
_Jefferson drive masticbeach_
_and a list of what was wrong_
_with the house_

Signature of Requestor: _Shamekia Holland_
                        (please sign name in full)

(Continued on reverse...)

Exhibit D



# INCORPORATED VILLAGE
# OF MASTIC BEACH

Maura P. Spery, *Mayor*
Bruce Summa, *Deputy Mayor*
Christopher Anderson, *Trustee*
Elizabeth Manzella, *Trustee*
Anne L. Snyder, *Trustee*

Susan F. Alevas, Esq., *Village Clerk/Administrator*

December 4, 2015

Ms. Shamekia Holland
293 South Ocean Avenue
Patchogue, New York  11772

Dear Ms. Holland:

### Re:  Freedom-of-Information Law (FOIL) Request -- # 95.2015_16

Thank you for your November 25, 2015, Freedom-of-Information Law (FOIL) request (*copy enclosed*).  In that regard, the Suffolk County Police Department, and not the Village of Mastic Beach, undertook the removal to which you refer in your FOIL request. Accordingly, any related documents you are seeking will need to be requested from the Suffolk County Police Department.

Thank you for your interest in our Village.

Yours sincerely,

Susan F. Alevas, Esq.
Village Clerk/Administrator

Enclosure

C:    Mayor, Deputy Mayor and Board of Trustees
      Deputy Village Clerk

369 Neighborhood Road • Mastic Beach, NY  11951 • 631.281.2326

www.masticbeachvillageny.gov

**Exhibit E**

10/27/2015

Village of Mastic Beach, NY

*Village of Mastic Beach, NY*
*Tuesday, October 27, 2015*

# Chapter 180. BUILDINGS AND STRUCTURES, UNSAFE

[HISTORY: Adopted by the Board of Trustees of the Village of Mastic Beach 3-13-2012 by L.L. No. 2-2012.[1] Amendments noted where applicable.]

**GENERAL REFERENCES**
Building Code — See Ch. **178**.
Moving of buildings — See Ch. **190**.
Electrical standards — See Ch. **200**.
Fire prevention — See Ch. **220**.
Housing standards — See Ch. **260**.
Property maintenance — See Ch. **350**.
Abandoned refrigerators — See Ch. **360**.
Rental property — See Ch. **380**.
Abandoned and junked vehicles — See Ch. **500**.

[1]:    *Editor's Note: This local law superseded former Ch. 180, Buildings and Structures, Unsafe, adopted 9-13-2011 by L.L. No. 4-2011, as amended.*

# § 180-1. Definitions.

As used in this chapter, the following terms shall have the meanings indicated:

**BUILDING**
    Any building, structure or portion thereof.

**BUILDING INSPECTOR**
    The Building Inspector of the Village of Mastic Beach and his duly appointed assistants or deputies or such other person appointed by the Village Board to enforce the provisions of this chapter.

**CONDITION**
    Any condition of a property in the Village, whether man-made or created by disaster, act of God, erosion or similar ongoing condition or process.

**PORTION OF BUILDING OR STRUCTURE**
    Any debris, rubble or parts of buildings which remain on the ground or on the premises after demolition, reconstruction, fire or other casualty

**PROPERTY**
    Any parcel of real property in the Village of Mastic Beach.

**UNSAFE OR HAZARDOUS BUILDING, CONDITION, PROPERTY OR STRUCTURE**
    Any building, property, or structure, or portion thereof, which, due to its state or condition, creates or poses a threat to the public health or safety or an imminent danger to life, or to adjoining or nearby properties or structures, or public roads, rights-of-way or structures, or which may contain one of the following conditions:

A.   Those whose interior walls or other vertical structural members list, lean or buckle to such an extent that a plumb line passing through the center of gravity falls outside of the middle third of its base.

B.   Those which, exclusive of the foundation, show 33% or more of damage or deterioration of the supporting member or members or 50% of damage or deterioration of the nonsupporting enclosing or outside walls or covering.

C.   Those which have improperly distributed loads upon the floors or roofs or in which the same are overloaded or which have insufficient strength to be reasonably safe for the purpose used.

D.   Those which have been damaged by fire, wind, or other causes so as to have become dangerous to life, safety, or the general health and welfare of the occupants or the public.

E.   Those which have become or are so dilapidated, decayed, unsafe, unsanitary or which so utterly fail to provide the amenities essential to decent living that they are unfit for human habitation or are likely to cause sickness or disease so as to work injury to the health, safety, or general welfare of those living therein.

F.   Those having light, air and sanitation facilities which are inadequate to protect the health, safety, or general welfare of persons who live or may live therein.

G.   Those having inadequate facilities for egress in cases of fire or panic or those having insufficient stairways, elevators, fire escapes or other means of communication.

H.   Those which have parts thereof which are so attached that they may fall and injure members of the public or property.

I.   Those which, because of their condition, are unsafe, unsanitary, or dangerous to the health, safety or general welfare of the people of this Village.

# § 180-2. Prohibition.

All buildings, conditions, properties and/or structures which are structurally or otherwise hazardous or unsafe, dangerous, unsanitary or not provided with adequate egress or which, in relation to an existing use, constitute a hazard to safety or health by reason of inadequate maintenance, dilapidation, erosion or other natural processes, obsolescence or abandonment are, for the purposes of this chapter, unsafe buildings, conditions, properties or structures. All such buildings, conditions, properties and structures are hereby declared to be illegal and are prohibited and shall be abated by correcting repair and rehabilitation or by demolition and removal in accordance with the procedures of this chapter.

# § 180-3. Investigation and report.

When, in the opinion of the Building Inspector, any building, condition, property or structure located in the Village of Mastic Beach shall be deemed to be dangerous or hazardous and unsafe to the public, as defined in §180-1, the Building Inspector shall make a formal inspection thereof and report in writing to the Village Board his findings and recommendations in regard to the building's or structure's removal or repair.

# § 180-4. Notice to repair or remove.

A.   When it shall be determined by the Building Inspector that a building, property or structure is dangerous, hazardous, or unsafe to the public, or that a condition is hazardous or unsafe, he shall promptly serve or cause to be served a written notice on the owner or other persons having an

interest in such property or structure as hereinafter provided.

B.    The aforementioned notice shall be served on the owner of the premises, the owner's executors, legal representatives, agents, lessees, or other person having a vested or contingent interest in the same, as shown by the last completed assessment roll of the Village, either personally or by registered mail, addressed to the person intended to be served at the last known place of business or residence as indicated on the last completed assessment roll. The Building Inspector shall cause a copy of such notice to be posted on the premises, and a copy of the notice shall be filed with the Suffolk County Clerk.

# § 180-5. Contents of notice.

The notice referred to in § **180-4** hereof shall contain the following:

A.    A description of the premises.

B.    A statement of the particulars in which the building, property or structure is dangerous, hazardous, or unsafe.

C.    An order requiring the building, property, or structure to be made safe and secure or removed or the condition to be remedied or removed.

D.    A statement that the securing or removal of the building or structure or removal of the condition shall commence within 10 days of the date of the service of the notice and shall be completed within 30 days thereafter. The Building Inspector may extend the time of compliance specified in the notice where there is evidence of intent to comply within the time specified and conditions exist which prevent immediate compliance. In granting any such extension of time, the Building Inspector may impose such conditions as he may deem appropriate.

E.    A statement that, in the event of neglect or refusal of the person served with the notice to comply with the same, a hearing will be held before the Board of Trustees of the Village of Mastic Beach, notice of which and the time and place thereof to be specified in the notice to the owner referred to in § **180-5** hereof.

F.    A statement that, in the event that the Village Board, after the hearing specified in § **180-7**, shall determine that the building, property, or structure or condition thereon is dangerous, hazardous, or unsafe to the public, the Village Board may order the building, property, structure, or condition to be corrected, repaired or secured or taken down, abated or removed.

G.    A statement that, in the event that the building, property, structure or condition shall be determined by the Village to be dangerous, hazardous, or unsafe, and in the event of the neglect or refusal of the owner to correct, repair or remove the condition, building or structure within the time provided, the Village may correct the condition or remove such building or structure by whatever means it deems appropriate and assess all costs and expenses incurred by the Village in connection with the proceedings to remove or secure, including the cost of actually remedying said unsafe or dangerous building, condition, or structure, or removing said building or structure and any engineering, legal or other expenses, as an assessment against the land on which said building or structure is located, to be charged to the owner of the property on the next Village tax roll, although the levying of an assessment by the Village against the property on the next Village tax roll shall not be an exclusive remedy and shall not preclude the Village from any other available remedy, including but not limited to pursuing a civil judgment against the owner of the property to recover the costs.

# § 180-6. Filing of copy of notice.

A copy of the notice referred to in § 180-4 hereof may be filed with the Suffolk County Clerk, which notice shall be filed by the Suffolk County Clerk in the same manner as a notice of pendency pursuant to Article 65 of the Civil Practice Law and Rules and shall have the same effect as a notice of pendency as therein provided, except as otherwise hereinafter provided in this section. A notice so filed shall be effective for a period of one year from the date of filing; provided, however, that it may be vacated upon the order of a Judge or Justice of a court of appropriate jurisdiction or upon the consent of the Village Attorney.

# § 180-7. Hearing.

The Village Board shall conduct the public hearing at the time and place specified in the notice to cure, remedy, repair, or demolish, or to remove or correct the unsafe or hazardous building, condition, property or structure as necessary. It may adjourn the hearing from time to time until all interested parties are heard and until the hearing is completed. At the conclusion of the hearing, the Village Board shall determine by resolution to:

A.    Revoke the order of the Building Inspector;

B.    Modify said order; or

C.    Continue and affirm said order to direct the owner or other persons to complete the work within the time specified in the order or such other time as shall be determined by the Village Board.

# § 180-8. Emergency measures.

If the Building Inspector determines, in his inspection of any building, condition, property or structure, that there is actual and immediate danger of failure or collapse or so as to endanger life, or other imminent hazard creating a danger to the public or public order and safety in the Village of Mastic Beach, the Building Inspector shall promptly require the building, condition, property or structure or a portion thereof to be vacated forthwith and not to be reoccupied until the specified repairs are completed and inspected and approved by the Building Inspector or take such other action as may be appropriate under the circumstances. For this purpose, the Building Inspector may enter such building, property or structure or land on which it stands or adjoining land or structures with such assistance and at such costs as may be necessary. The Building Inspector may also order adjacent buildings, properties or structures or portions thereof to be vacated and protect the public and public order and safety by appropriate barricades or such other means as may be necessary and for this purpose may close a private or public right-of-way. The Building Inspector shall cause to be posted at each entrance to such building, property or structure a notice stating: "This building (property, structure) is unsafe, and its use or occupancy has been prohibited by the Building Inspector." Such notice shall remain posted until the required repairs are made or demolition is completed. It shall be unlawful for any person, firm or corporation or their agents or other persons to remove such notice without written permission of the Building Inspector or for any person to enter the building except for the purpose of making the required repairs or the demolition thereof. The costs of any such action, including but not limited to labor, materials, management, professional and or legal fees and costs and expenses, shall be assessed as a lien against the property on which the condition exists and shall be collected in the same manner as if real property taxes.

# § 180-9. Request for Judicial Action.

In the event that he believes that judicial action is required to enforce any provision of this chapter, the Chief Building Inspector shall seek approval and direction from the Board of Trustees to the Village Attorney to institute such proceedings in the Supreme Court as are necessary to effect the purposes of this chapter.

## § 180-10. Costs and expenses.

All costs and expenses incurred by the Village of Mastic Beach in connection with any proceeding or any work done to remove the danger or condition or to render the building, property or structure temporarily safe or in connection with the correction or demolition or removal of any such building or structure shall be assessed against the land on which such building or structure is located, and a statement of such expenses shall be presented to the owner of the property, or, if the owner cannot be ascertained or located, then such statement shall be posted in a conspicuous place on the premises. Such assessment shall be and constitute a lien upon such land. If the owner shall fail to pay such expenses within 10 days after the statement is presented or posted, a legal action may be brought to collect such assessment or to foreclose such lien. As an alternative to the maintenance of any such action, the Building Inspector may file a certificate of the actual expenses incurred as aforesaid, together with a statement identifying the property in connection with which the expenses were incurred and the owner thereof, with the Assessor, who shall, in preparation of the next assessment roll, assess such amount upon such property. Such amount shall be included in the levy against such property, shall constitute a lien and shall be collected and enforced in the same manner, by the same proceedings, at the same time and under the same penalties as provided by law for the collection and enforcement of real property taxes in the Village of Mastic Beach.

## § 180-11. Trespassing.

In addition to serving the notice provided in § 180-5, the Village Board of Trustees may, if it determines that the purposes of this chapter will be further effectuated, order that no person other than the owner or its agent shall enter upon the property and shall post on such property signs indicating: "No trespassing." Anyone found trespassing in violation of this section shall be liable for a fine not to exceed $250 for each offense.

## § 180-12. Application for court order.

The Village Board of Trustees, in its discretion, may elect to commence a civil action to apply to the Supreme Court of the State of New York for an order directing that the hazardous or unsafe building, condition, property or structure be remedied or corrected or that the building, property or structure be repaired, secured or demolished and removed, and for a judgment in favor of the Village and against the owner of the property for the costs, including but not limited to all professional, administrative and legal fees for the abatement or actions of the Village with respect to the dangerous or unsafe building, condition, or structure; and the election by the Village to commence or pursue a civil action shall not be an exclusive remedy and shall not waive or preclude the right of the Village to pursue any other available remedy.

## § 180-13. Collection of costs.

The Village Board may commence a special proceeding pursuant to §78-b of the General Municipal Law to collect the costs of demolition, including reasonable and necessary legal expenses.

## § 180-14. Penalties for offenses.

The following is a fine schedule for violations of this chapter:

A.    First convicted violation: $250.

B.    Second convicted violation $1,000.

C.   Third violation: $2,500 and/or 10 days in jail.

D.   Each day that a violation of this chapter exists shall constitute a separate offense and violation of this chapter with a separate and additional penalty.

# § 180-15. Proceedings to obtain title to abandoned buildings or properties.

Notwithstanding anything contained in the prior sections of this chapter with regard to securing and removing unsafe buildings, the Building Inspector and/or the Department of Code Enforcement of the Village of Mastic Beach is hereby authorized to request that the Board of Trustees institute proceedings in accordance with the Real Property Actions and Proceedings Law of the State of New York in order to obtain a judgment vesting in the Village of Mastic Beach title to any dwelling which has been abandoned by the owner thereof, except for an owner-occupied one- or two-family dwelling, all as contained within the Real Property Actions and Proceedings Law.

# § 180-16. Emergency action.

A.   In case there shall be, in the opinion of the Building Inspector, actual and immediate danger of the falling of a building or structure or a hazardous excavation so as to endanger public safety, life or property or actual or immediate menace to health or public welfare as a result of the conditions present in or about a building or structure or excavation, he shall direct the appropriate Village employees to perform the necessary work to render such building or structure or excavation temporarily safe, whether the procedure prescribed in this chapter for unsafe or dangerous buildings or structures or excavated lands has been instituted or not.

B.   When emergency work is to be performed under this section, the Chief Building Inspector shall cause the owner and mortgagee thereof, if any, as shown on the records of the Village Assessor, to be served personally or by certified mail, return receipt requested, and shall post the premises with a notice to comply containing a description of the premises, a statement of facts describing the structure or excavation as unsafe or dangerous, and orders and directions to correct the same conditions which constitute an emergency within a specified period not to exceed three days from actual or constructive service of the notice.

C.   In the event that the emergency does not permit any delay in correction, the notice shall state that the Village has corrected the emergency condition.

D.   In both cases, the notice shall state that the corrective costs of the emergency will be assessed against the owner pursuant to the provisions of this chapter.